# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **ORIGIN BANK F/K/A COMMUNITY TRUST BANK** | **PLAINTIFF** |
| V. | **CASE NO.: 3:21-CV-61-TSL-MTP** |
| **HAVEN CAMPUS COMMUNITIES-STARKVILLE, LLC, STEPHEN H. WHISENANT, JOHN A. WILLIAMS, JR., WATKINS J. BLANE, JR., AND MARK BOUTWELL** | **DEFENDANTS** |

## MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF ORIGIN BANK'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO F.R.C.P. 65

Plaintiff Origin Bank f/k/a Community Trust Bank ("Origin" or "Applicant") submits this memorandum brief in support of its motion filed contemporaneously herewith pursuant to Federal Rule of Civil Procedure 65 ("Rule 65") for entry by this Court of a temporary restraining order against Defendant Haven Campus Communities – Starkville, LLC ("Haven-Starkville" or the "Defendant") and following hearing by this Court entry of a preliminary injunction to remain in place pending final disposition and judgment by this Court in the above-referenced Action.

## I. BACKGROUND

Pending in the above-referenced Action is Origin's Complaint against Defendant Haven Campus Communities-Starkville, LLC and the Guarantor Defendants for a judgment in favor of Origin and against the Defendants for the balance remaining owed and outstanding to Origin pursuant to a commercial construction loan borrowed by the Defendant on or about June 16, 2014, in the

original principal amount of $18,615,081.00, which matured and became due and owed to Origin in full on November 30, 2020 (the "Loan"), which amounts the Defendants failed to timely repay and satisfy in accordance with the terms of the agreements entered into between and executed by the parties in connection with the Loan.[1] None of these facts are in dispute; the Defendants admit them.[2]

Among the established and undisputed facts forming the basis for the above-referenced Action are that Haven-Starkville entered into, executed and delivered to and for the benefit of Origin in connection with the Loan and as an inducement to Origin for same an absolute assignment to Origin whereby Haven-Starkville sold, conveyed, transferred and set unto Origin for all purposes every right and interest then held or to become held at any time by Haven-Starkville to collect and receive, demand and enforce, and require turnover and direct payment of, all amounts to become owed at any time for any and all rent, lease, use or other occupation of the Property or any portion thereof[3] as provided by the plain and unambiguous terms of

---

[1] Affidavit, Motion Exhibit "1"; *see also* Origin's Complaint, Dkt. #1, ¶¶ 9-21.
[2] *See* Defendants' Answer and Affirmative Defenses, Dkt. #11 (the "Answer"), ¶¶ 9-18, 20-21 (admitting, *inter alia*: that Haven-Starkville borrowed the Loan and entered into and executed the Loan Documents with and for the benefit of Origin in connection with same; that the Guarantor Defendants entered into and executed the Guaranty Agreements in favor of Origin in connection with the Loan; that true and correct copies of the Loan Documents and Guaranty Agreements are attached to Origin's Complaint as exhibits thereto; that the documents and terms and provisions thereof speak for themselves; and that "amounts remain due and owing by one or more of the Defendants" to Origin related to the Loan).
[3] As set out in the Complaint and the agreements entered into by the parties as discussed therein (and attached thereto as exhibits, which are admitted by the Defendants in the Answer), the subject Loan was obtained by Haven-Starkville "for the stated purpose of constructing and operating a student-housing facility on certain real property located in Starkville, Oktibbeha County, Mississippi (the 'Property') to be known as 'Haven on 12' and certain related improvements (hereafter, the 'Project')." Dkt. #1 at p.3, ¶9.

the *Assignment of Leases and Rents* dated June 16, 2014, and further evidenced by the *Construction Deed of Trust, Assignment of Leases and Rents, and Security Agreement* dated June 16, 2014.[4] Despite admitting the terms of the Assignment, and admitting default pursuant to the terms of the Loan Documents between the parties entered into in connection with the Loan by failure to timely repay and satisfy the balance of indebtedness which remains owed and outstanding to Origin thereunder, the Defendants are collecting and wrongfully withholding, and overtly refusing to turnover to Origin despite repeated demands by Origin for same, rent and lease proceeds arising from the Property.

Moreover, Haven-Starkville is required by the terms of the Assignment to maintain amounts collected or received for rent, lease, use or occupation of the Property in a separate account,[5] and yet despite Origin's requests and demands, *Haven-Starkville has failed and continues to refuse* to provide confirmation on the

---

[4] True and correct copies of the Assignment and the Deed of Trust, respectively, are attached to Origin's Complaint in collective Exhibit "C" and also attached to the Affidavit (Motion Exhibit "1") in Affidavit Exhibit C. As set out in the Complaint, and admitted by the Defendants: "[I]n connection with the Loan, Haven-Starkville executed and delivered to and for the benefit of Origin, among other things, a *Construction Deed of Trust, Assignment of Leases and Rents, and Security Agreement* dated June 16, 2014 (the "Deed of Trust") and an *Assignment of Leases and Rents* dated June 16, 2014 (the "Assignment"), true and correct copies of which are attached [to Origin's Complaint (Dkt. #1)] as collective "Exhibit C" and incorporated fully [t]herein for all purposes." Origin's Complaint, Dkt. #1 at ¶12; *see* Defendants' Answer, Dkt. #11 at p. 4, ¶12 (admitting same). Origin's Complaint proceeds to define the term "Loan Documents" to refer collectively for purposes of the Complaint to the Loan Agreement (defined in Complaint, Dkt. #1 at ¶10 and attached in Complaint Exhibit "A"), the Note (defined in Complaint, Dkt. #1 at ¶11 and attached in Complaint Exhibit "B"), the Deed of Trust and Assignment (defined in Complaint, Dkt. #1 at ¶12 and attached in Complaint collective Exhibit "C") "and other agreements and instruments entered into and/or executed in connection with the Loan". Complaint, Dkt. #1 at FN1.

[5] Assignment, Dkt. #1-3 at pp. 24-27.

location, extent and/or identity of person(s) possessing or controlling the funds collected or received for rent, lease, use and/or occupation of the Property which for all purposes from and after November 30, 2020, *has been collected or received by or for the benefit of Haven-Starkville without any right, license or permission* and in violation of the terms of the Assignment Haven-Starkville readily admits it executed and delivered to Origin as inducement to Origin to extend the Loan which Haven-Starkville obtained, used, and failed to repay to Origin in accordance the terms of their agreements.[6]

On information and belief, Haven-Starkville and/or parties acting for or on its behalf whom received notice from Origin concerning the Assignment and Origin's right to directly collect and receive all rental and lease proceeds from the Property pursuant thereto have collected and are continuing to hold without right or license of any kind proceeds which belong to Origin, which proceeds are not being properly maintained by Haven-Starkville as required by the terms of the Assignment and are being wrongfully withheld from Origin. Due to the repeated admissions of the Defendants concerning unavailability of finances and need for all available liquid assets to pay and satisfy other loans and indebtedness obligations of the Defendants, and Haven-Starkville's refusal to turnover and continued wrongful withholding of the rents and leases from Origin despite agreement as to the default and Origin's right to collect and receive same, and the daily continued accrual and incurrence by Origin of amounts owed by the Defendants pursuant to the Loan which remain unpaid and

---

[6] *See id.; see also* Origin's Motion and exhibits filed in support thereof and incorporated fully therein by reference.

outstanding (including but not limited to amounts owed and becoming owed in daily accruing interest, costs and expenses, fees, costs and expenses related to this Action, and otherwise resulting from Haven-Starkville's defaults pursuant to the Loan Documents terms), the substantial size of the indebtedness owed by these Defendants, and their express admissions of their intent to continue to wrongfully withhold and pay out, transfer, and otherwise dissipate all of the funds which are indisputably Origin's and Origin's alone pursuant to the absolute Assignment, immediate relief by this Court is necessary in order to stop Haven-Starkville and any parties acting on its behalf from continued collection and/or receipt and/or sale, transfer, use, and/or otherwise dissipation of the funds without any legal right, title or interest, and in direct violation of the rights of Origin to directly collect and receive all such monies pursuant to applicable law and the agreements between the parties.

## II. DISCUSSION

A.  Legal Standard

"The very purpose of an injunction under Rule 65(a) is to give temporary relief based on a preliminary estimate of the strength of plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case."[7] As demonstrated herein, an order by this Court pursuant to Rule 65(a) is necessary to preserve the status quo and the relative positions of both Origin and the Defendants

---

[7] Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 11A Fed. Prac. & Proc. Civ. § 2948.3 (3d ed. 2016).

5

on an urgent basis, and is squarely within the design and means for such relief by this Court pursuant to all applicable law.[8]

"The prerequisites to obtaining a preliminary injunction are familiar."[9] "The applicant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest."[10] As set out hereinbelow, the facts and circumstances present before the Court weigh plainly in favor of granting Origin the relief it seeks; an immediate hold must be placed on the Funds to protect the parties' rights and interests.

B.  Analysis

A temporary restraining order and preliminary injunction to remain in place pending final disposition in this Action by this Court is necessary to preserve the *status quo* concerning the property rights and interests of the parties which the parties themselves agreed upon, put into place, and relied upon to remain in place for purposes of the transaction between them which is the subject of this Action, and to protect the ability of the parties to resurrect and recoup from the consequences of the continuing, substantial harms which are being imposed upon them and their rights

---

[8] *See Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("[T]he issuance of a prohibitory injunction freezes the status quo, and is intended 'to preserve the relative positions of the parties until a trial on the merits can be held.'") (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).
[9] *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012).
[10] *Id*. (citation omitted).

and interests as a result of the continuing default by the Defendants herein, and the continuing refusal by the Defendants to acknowledge the Assignment and the continuing obligations imposed upon Haven-Starkville and the parties acting for or on its behalf or in concert with it to keep possession of the Proceeds away from reach of Origin – the *only* party with any right, title, permission, or license to receive and collect them. As demonstrated hereinbelow, the relief as requested by Origin from this Honorable Court herein is both necessary and proper pursuant to applicable law.

1. <u>There is a Substantial Likelihood that Applicant Will Prevail on the Merits of Its Claims</u>

Origin is substantially likely to succeed on the merits of its claims. First, Origin's claims against the Defendants herein are already demonstrated by the record and by the Affidavit and evidence submitted therewith in support of Origin's Motion. The Defendants admit the borrowed the money, entered into and executed the Loan Documents, received the Loan Proceeds, and failed to timely repay and satisfy their obligations and the indebtedness they owed and owe to Origin thereunder. Origin is accordingly entitled to final judgment by this Court on its claims pursuant to well-established Mississippi law and the plain terms of the agreements between the parties – none of which are in dispute.

Additionally, Origin is substantially likely to succeed on the merits concerning its request for issuance of a preliminary injunction by this Court to enforce the terms of the absolute Assignment in order to protect the parties' rights and interests pending the Court's final disposition of Origin's claims in this Action. Courts applying Mississippi law enforce absolute assignments of rents made by a borrower in conjunction with a

commercial loan transaction.[11] Origin obtained a perfected lien on rents when it properly recorded the Assignment in the property records.[12] Mississippi is an intermediate theory state.[13] As a result, courts will enforce contractual provisions requiring that upon default, a mortgagee immediately receives the right to possess property, including rents, without having to make demand.[14]

It is thus readily apparent that the first consideration – whether the party seeking an injunction has a substantial likelihood of success on the merits – weighs heavily in favor granting Origin's request for relief by this Court.

    2.    <u>Applicant Will Suffer Irreparable Injury Unless the Injunction Issues</u>

"To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable."[15] "The plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm."[16]

Injunctive relief is necessary to prevent irreparable harm to Origin because its rights to the Proceeds and possession and use of same presently for handling pursuant to and in accordance with the terms of the parties' agreements has already been irreparably taken away from Origin, and is presently continuing to be wrongfully withheld from Origin. All facts and circumstances indicate that without intervention by this Court as sought by Origin in its Motion, Haven-Starkville will

---

[11] *O'Neal Steel, Inc. v. E. B. Inc. (In re Millette)*, 186 F.3d 638 (5th Cir. 1999).
[12] *Id.*
[13] *Davis v. JP Morgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 39138 (S.D. Miss. 2014).
[14] *Id.*
[15] *Humana, Inc. v. Avram A. Jacobson, M.D.*, P.A., 804 F.2d 1390, 1394 (5th Cir. 1986).
[16] *Id.* (citations omitted).

continue to refuse to comply with the Assignment, leaving Origin without the benefit of present use of the Proceeds as bargained for by the parties, and without any substantial basis for expectation that the Proceeds may ever be recovered; this cannot be redressed by any monetary judgment rendered later on by this Court upon final disposition.

The harm has happened, and *is* happening, now, and will continue to happen, absent this Court's intervention. Relief is needed immediately to freeze the situation and prevent it from going further. Simply put, "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury[]" exists here.[17]

Absent injunctive relief by this Court requiring enforcement and compliance with the Assignment herein by the Defendants and those acting for and on behalf thereof pending full and final disposition by this Court not only threatens but indeed promises to continue to impose and worsen the harm upon Origin due to Haven-Starkville's repeated and continued failures and refusals to comply with the Assignment terms. Origin has already been prevented due to Haven-Starkville's actions from utilizing the Proceeds to apply same to cover costs and expenses being incurred by Origin and to reduce the indebtedness owed (which is increasing daily) as provided by and pursuant to the terms of the Assignment for nearly four (4) months. And with the continued refusals by Haven-Starkville to even respond concerning the safety, extent, and whereabouts of the Proceeds, Origin has more than substantial basis to believe this harm will continue without this Court's intervention.

---

[17] *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (emphasis in original).

9

Moreover, the injunctive relief sought would impose no harm upon the Defendants – because doing so would serve them in the precise manner they agreed upon and expected to comply with upon entering into the Loan Documents and obtaining the Loan proceeds from Origin. This factor therefore also weighs decidedly in favor of granting the injunctive relief sought by Origin.

3. <u>The Opposing Party Will Not Suffer Any Damage by the Proposed Injunction. Even If Any Damage Would Potentially Be Imposed (Which is Denied), It Is Plainly Outweighed by the Threatened Injury to Applicant.</u>

Any potential harm to Defendants—of which there is none (since Origin asks only to give them the benefit of their bargain) is outweighed by the serious and direct threat of continued substantial and irreparable harm to Origin.

"Courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[18] As a threshold matter, the Defendants do not stand to suffer any damage should this Court issue a preliminary injunction to maintain the status quo by enjoining them from proceeding with permitting unauthorized collection, use and withholding of the Proceeds owned by Origin in express violation of the terms and conditions of the agreements they made with Origin whereby they received over $18 million in Loan proceeds and whereupon Origin relied for purposes of doing so, especially where as here the Defendants have already admitted and so it is established for purposes of this Action that they entered into, executed, and delivered to and for the benefit of

---

[18] *Farnam v. Walker*, 593 F. Supp. 2d 1000, 1016 (C.D. Ill. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

10

Origin the absolute Assignment, that they received the Loan proceeds, and that amounts owed by them to Origin under the Loan were not timely paid in full as required by the Loan Documents' terms.

Directing Haven-Starkville to receive the benefits of its bargains whilst Origin continues to suffer the consequences of the Defendants' failures to comply with the terms agreed to by the parties is not only *not harmful* to the Defendants, but is, rather, necessary for their protection as well. That is, continued wrongful appropriation and dissipation of Origin's Proceeds by Haven-Starkville and/or third-parties believed to be acting on its behalf or in concert with it, will most certainly result in harm to the Guarantor Defendants, as well as Haven-Starkville, as the consequence is increased indebtedness owed by all of them to Origin pursuant to the Loan Documents and Guaranties. Indeed, increased bases for liability by the Defendants and other related to the Proceeds withholding and misappropriation are within the immediate realm as well, only bolstering the conclusion that the *status quo <u>must be protected</u>* lest the parties' rights and interests receive further blows of a potentially disastrous and certainly not repairable nature.

The Defendants will not be harmed, and indeed will benefit; with the threatened continued and worsened injury to Origin and its rights and interests in the absence of injunctive relief having been established, the analysis under this factor becomes a plain one: it also weighs heavily in favor of granting the injunctive relief.

4. <u>The Injunction, if Issued, Would Not Be Adverse to the Public Interest</u>

Issuance of the relief sought by Origin herein would not in any respect be adverse to the public interest; indeed, the public interest is most assuredly *furthered* by this Court's honoring and enforcing the terms of the agreements which these sophisticated parties knowingly, willfully, and admittedly entered into and executed, and relied upon – respectively – for purposes of obtaining the substantial commercial Loan (on the side of Haven-Starkville) and for purposes of extending the substantial commercial Loan and credit to and for the benefit of Haven-Starkville (on the side of Origin). Public confidence in courts' honoring of contracts entered into by knowing and competent parties, particularly where such contracts are plain, unambiguous, and all parties are in agreement on their existence and enforceability – such as the case here, is requisite to the functioning of our markets and economy, and lies at the very basis of the laws our courts exist to protect and enforce.

"Focusing on this factor is another way of inquiring whether there are policy considerations that bear on whether the order should issue."[19] On the facts and circumstances present here and demonstrated by Origin in its Motion and supporting documents and evidence, and the record herein, this factor also weighs in favor of granting the relief sought from this Court by Origin, and at the very least most certainly does not weigh against it.

---

[19] 11A Fed. Prac. & Proc. Civ. § 2948.4 (3d ed.).

5. <u>A Bond Is Not Required For Issuance By This Court of the Relief Sought by Applicant.</u>

Because Origin is entitled by the plain language of the governing agreements between the parties to immediate possession of the Proceeds, and because the Defendants in this case have admitted and agreed to same on the record of proceedings in this Action, the basis for the bond referenced by Rule 65(c) is not implicated, and therefore not required for purposes of this Court's proceeding with issuance of the relief sought by Origin. As the Fifth Circuit has made clear, it is within the discretion of district courts to determine what bond – if any – is proper under the circumstances presented to it.[20]

In the event this Court were to determine however that a bond is proper for purposes of issuance of the relief sought by Origin pursuant to Rule 65(c), as set forth in Origin's Motion, Origin is stands prepared to obtain same.

### III. CONCLUSION

As demonstrated above, based on all applicable law and the facts and circumstances shown by Origin in its Motion and supporting documents, and the record of the proceedings in this Action, issuance of a temporary restraining order by this Court, and a preliminary injunction to remain in place pending disposition by

---

[20] *See, e.g. Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir. 1996); *see also A.T.N. Indus., Inc. v. Gross,* 632 Fed. Appx. 185*, 2015 U.S. App. LEXIS 21321** (5th Cir. Dec. 7, 2015) (unreported) (holding that the district court did not abuse its discretion in issuing relief pursuant to Rule 65, explaining that although "Rule 65(c) does require that a court 'issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained[]' [b]ut under Rule 65(c), a court 'may elect to require no security at all[]," noting that [t]he Rule itself allows the court to provide the amount that it 'considers proper'" (citing *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir. 1996) and Rule 65(c)) (internal citations omitted). properly issued relief pursuant to Rule 65 without requirement of bond .

13

this Court of the claims herein, are appropriate and proper pursuant to all applicable law, and necessary in this case to preserve the status quo and protect the rights and interests of the parties.

Respectfully submitted, this 7th day of April, 2021.

**ORIGIN BANK f/k/a COMMUNITY TRUST BANK**

By: s/ *Sarah Beth Wilson*
Sarah Beth Wilson, Bar No. 103650
Phelps Dunbar LLP
4270 I-55 North
Jackson, Mississippi 39211
Telephone: (601) 360-9706

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on this date I caused the above and foregoing to be filed electronically with the Clerk of the Court using the CM / ECF system which sent notification of such filing to all parties receiving notices in the above-referenced action including Douglas C. Noble, *Counsel for the Defendants*.

The undersigned does hereby further certify that the above and foregoing is also being placed in U.S. Mail, First Class, to: Peak Campus, 2970 Clairmont Road NE, Suite 310, Atlanta, Georgia 30329.

Dated: April 7, 2021.

/s/ *Sarah Beth Wilson*
Of Counsel